IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**LEE MAY**,

        **Plaintiff**,

v.                                                    CASE NO. 2:09-cv-001489

**MICHAEL J. ASTRUE**,
**Commissioner of Social Security**,

        **Defendant.**

### M E M O R A N D U M   O P I N I O N

    This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for Supplemental Security Income ("SSI"), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Both parties have consented in writing to a decision by the United States Magistrate Judge. Currently pending before the court is Plaintiff's Motion for Judgment on the Pleadings.[1]

    Plaintiff, Lee May (hereinafter referred to as "Claimant"), filed an application for SSI on December 6, 2005, alleging disability as of February 20, 2005, due to diabetes, heart and lung problems, gall bladder disease, enlarged prostate, ulcers in the stomach, cyst on the left kidney, fatty tissue in the liver and

---

[1] The court reminds Plaintiff that pursuant to Local Rule of Civil Procedure 9.4(a), the parties need not file motions in support of judgment on the pleadings. Instead, Plaintiff should file "a brief in support of the complaint," while Defendant files "a brief in support of the defendant's decision." Local Rules of the United States District Court for the Southern District of West Virginia, Local Rule of Civil Procedure 9.4(a).

high blood pressure. (Tr. at 58-60.) The claim was denied initially and upon reconsideration. (Tr. at 42-46, 48-50.) Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 41.) The hearing was held on November 21, 2008, before the Honorable John Quinlivan. (Tr. at 317-35.) The ALJ continued the hearing to obtain additional evidence, and a supplemental hearing was conducted on April 16, 2009. (Tr. at 336-60.) By decision dated May 27, 2009, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 17-26.) The ALJ's decision became the final decision of the Commissioner on October 30, 2009, when the Appeals Council denied Claimant's request for review. (Tr. at 6-9.) On December 16, 2009, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R.

§ 416.920 (2009).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. § 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. § 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. § 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. § 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. § 416.920(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 416.920(f) (2009).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this

specific job exists in the national economy.  McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date.  (Tr. at 19.)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of COPD, non-insulin dependent diabetes mellitus with abdominal pains, farsightedness without glasses and complaints of back pain.  (Tr. at 19.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 21.)  The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations.  (Tr. at 22.)  As a result, Claimant cannot return to his past relevant work.  (Tr. at 24.)   Nevertheless, the ALJ concluded that Claimant could perform jobs such as order filler, price marker, assembler, routing clerk and grader/sorter, which exist in significant numbers in the national economy.  (Tr. at 25.)  On this basis, benefits were denied.  (Tr. at 25.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In Blalock v. Richardson, substantial evidence was defined as

4

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was 48 years old at the time of the administrative hearing. (Tr. at 320.) Claimant completed the seventh grade at age fifteen. He attempted to obtain his GED, but was unsuccessful. (Tr. at 321.) In the past, he worked as a cashier and as a truck driver. (Tr. at 321, 325.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

On October 12, 2005, Claimant underwent left heart catheterization, left ventriculogram, bilateral selective coronary angiography and bilateral selective renal artery angiography. (Tr. at 164.) Claimant had normal left ventricular function, no significant disease of the left sided valves, the coronary arteries were angiographically normal and there was no renal artery stenosis. (Tr. at 164.)

On October 13, 2005, a CT of the chest showed no evidence of pneumothorax, dissection or obvious embolus to account for acute chest pain post cardiac catheter. (Tr. at 166.)

A ventilatory function report form completed in May of 2006 indicated that Claimant had moderate restrictive pulmonary disease with improvement after bronchodilator. (Tr. at 173.)

On May 17, 2006, Claimant complained of post prandial diarrhea and was diagnosed with chronic diarrhea, which was most likely functional and related to his diabetes. (Tr. at 177.)

On May 27, 2006, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform light work, with occasional postural limitations (except an inability to climb ladders, ropes and scaffolds), and a need to avoid concentrated exposure to extreme cold, heat, noise, vibration, fumes, odors, dusts, gases, poor ventilation and hazards. (Tr. at 178-85.)

On October 18, 2006, a State agency medical source completed

a Physical Residual Functional Capacity Assessment and opined that Claimant could perform light work with occasional postural limitations and that he should avoid concentrated exposure to extreme cold and fumes, odors, dusts, gases and poor ventilation. (Tr. at 298-05.)

On October 24, 2006, Gregory A. Elkins, M.D. completed a West Virginia Department of Health and Human Resources, General Physical (Adults) and opined that Claimant was disabled.  (Tr. at 187.)

The record includes treatment notes from Ultimate Health Services dated October 7, 2005, through November 27, 2007.  (Tr. at 188-220.)  Claimant was treated for chest pain, diabetes, hypertension, moderate COPD/emphysema, and pneumoconiosis.  A CAT scan of Claimant's lungs in 2005 indicated some spots that could be indicative of lung disease.  (Tr. at 208.)  Claimant's physician, Peter Ottaviano, D.O., recommended smoking cessation. (Tr. at 188.)

The record includes treatment notes and other evidence from Greg Chaney, M.D. and others at Tri-State Medical Center dated April 17, 2003, through April 14, 2008.  (Tr. at 221-84, 288-91.) On August 12, 2005, Claimant had shortness of breath and reported several days of sharp pain on the left side.  (Tr. at 236.)  He underwent an exercise stress test, which was negative for cardiac ischemia.  (Tr. at 240.)  On August 16, 2005, an ultrasound of the abdomen showed a simple cyst in the mid pole of the left kidney.

7

(Tr. at 235.) An echocardiogram on March 19, 2008, was normal. (Tr. at 291.) On March 24, 2008, Claimant underwent carotid ultrasound, abdominal ultrasound and renal ultrasound. The impression was simple cyst within the upper pole of the right kidney with an otherwise negative study. (Tr. at 223.) There is a Medical Assessment of Ability to do Work-Related Activities (Physical) in the medical records for Tri-State Medical Center. A handwritten note on the form dated March 28, 2008, states that "Dr. Chaney did /would not complete." (Tr. at 221.) On April 14, 2008, Dr. Chaney wrote that he had chosen to terminate the care he and Tri-State Medical had been providing Claimant as his family physician. (Tr. at 288.)

Claimant returned to Ultimate Health Services on June 9, 2008, and Dr. Ottaviano's impression was that Claimant's COPD was stable. (Tr. at 292.)

On December 9, 2008, Elma Z. Bernardo, M.D. examined Claimant following the first administrative hearing. Dr. Bernardo diagnosed psychological factors affecting multiple medical problems, depressive disorder, not otherwise specified and low intellectual functioning on Axis I and rule out schizoid personality on Axis II.

Dr. Bernardo completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) and opined that Claimant had marked limitations in the ability to understand, remember and carry out complex instructions, and make judgments on complex work-

related decisions; moderate limitations in interacting appropriately with supervisors, co-workers and responding appropriately to usual work situations and to changes in a routine work setting; and mild limitations in understanding, remembering and carrying out simple instructions and in making judgments on simple work-related decisions. (Tr. at 310-11.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ disregarded the effects of Claimant's COPD, non-insulin dependent diabetes mellitus, farsightedness, low intellectual functioning and complaints of back pain; (2) the ALJ failed to properly consider Claimant's pain and to perform any credibility determination; (3) the ALJ failed to consider Claimant's impairments in combination. (4) the ALJ erred in failing to adopt the testimony of the vocational expert; and (5) the ALJ erred in his duty to develop the record. (Pl.'s Br. at 8-13.)

The Commissioner argues that (1) substantial evidence supports the ALJ's decision that Claimant is not disabled; (2) the ALJ properly considered all of Claimant's impairments; (3) the ALJ properly assessed Claimant's complaints of pain; (4) the ALJ complied with his duty to develop the record; and (5) the ALJ did not err in assessing Claimant's credibility. (Def.'s Br. at 10-14.)

First, The court finds that the ALJ did not disregard the effects of Claimant's COPD, diabetes, farsightedness, low intellectual functioning and back pain, as Claimant argues. Instead, his residual functional capacity finding accounting for the limitations caused by these impairments is supported by substantial evidence.

In his decision, the ALJ found the above impairments to be severe. (Tr. at 19.) He ultimately reduced Claimant's residual functional capacity substantially. He found Claimant could perform light work reduced by no sustained/frequent overhead work due to back and abdominal pains; no climbing hills/slopes or work on uneven terrain due to shortness of breath; no climbing high ladders or work at unprotected heights secondary to "dizzy spells;" only occasionally climbing stairs/steps/ramps, bending/stooping, crouching/squatting, kneeling or crawling; no operation of mobile equipment due to "dizzy spells" and no CDL license; no commercial driving; no exposure to excessive air pollutants, pulmonary irritants or allergens, no exposure to temperature extremes; no working in damp-humid conditions due to shortness of breath; and Claimant should be permitted to wear corrective eyeglasses as desired due to far-sightedness and be permitted to wear ear protective devices or hearing aids as appropriate. (Tr. at 22.)

The ALJ further limited Claimant's residual functional capacity secondary to his marginal academic functional level and

10

less than sixth grade education (but at least fourth grade), by finding that Claimant has a marked (substantial loss in the ability to effectively function) ability to understand/remember/carry out complex instructions and make judgments on complex work-related decisions; moderate (slight limitation and still able to function satisfactorily) ability to interact appropriately with supervisors/co-workers and respond appropriately to usual work situations and to changes in a routine work setting; and mild (can generally function well) ability to understand/remember/carry out simple instructions, make judgments on simple work-related decisions, and interact appropriately with the public. (Tr. at 22.)

These limitations more than account for Claimant's impairments and their resulting effect and are supported by substantial evidence. When included in a hypothetical question to the vocational expert, the vocational expert identified jobs Claimant could perform. (Tr. at 353-54.)

Next, the court finds that the ALJ's pain and credibility findings are consistent with the applicable regulations, case law and social security ruling ("SSR") and are supported by substantial evidence. 20 C.F.R. § 416.929(b) (2009); SSR 96-7p, 1996 WL 374186 (July 2, 1996); Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). The ALJ found that Claimant met the first prong of the pain analysis because he had medically determinable impairments that

could reasonably be expected to cause the alleged symptoms. (Tr. at 23.) The ALJ's decision contains a thorough consideration of Claimant's daily activities, the location, duration, frequency, and intensity of Claimant's pain, precipitating and aggravating factors and Claimant's medication. (Tr. at 23.)

The ALJ concluded that Claimant's credibility was "poor to at least fair" citing medical evidence of record showing a pattern of noncompliance with medical care and recommendations and his fairly extensive daily activities. (Tr. at 24.) The ALJ's findings are well reasoned and supported by substantial evidence.

Claimant next complains that the ALJ did not consider Claimant's impairments in combination, including his shortness of breath, extreme fatigue or the fact that he had to take several breathing treatments over an eight-hour period. (Pl.'s Br. at 11.)

The ALJ properly considered Claimant's impairments, both alone and in combination in keeping with the applicable regulation. It provides that

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

20 C.F.R. § 416.923 (2009). Where there is a combination of impairments, the issue "is not only the existence of the problems,

but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir. 1974). The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. Id. The cumulative or synergistic effect that the various impairments have on claimant's ability to work must be analyzed. DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).

The ALJ considered Claimant's frequent breathing treatments and shortness of breath in assessing Claimant's subjective complaints, but found them to be not credible. The ALJ found: "He cannot breath[e] and is up and down all night long taking breathing treatments (six a day). The treatments last 15 to 20 minutes and that he has to wait for the shaking to go away." (Tr. at 23.) The ALJ's decision reflects a consideration of Claimant's breathing and other impairments both alone and in combination as reflected in his assessment of Claimant's subjective complaints, in finding Claimant's impairments severe and in the residual functional capacity finding.

Claimant similarly argues that the ALJ ignored his frequent breathing treatments and the vocational expert's testimony that he could not work if he had to take breaks for the breathing treatments. (Pl.'s Br. at 11.) In rejecting the vocational

expert's testimony, the ALJ explained that he found the Claimant's testimony to be not credible. (Tr. at 25.) As noted above, the ALJ's credibility findings in this regard are supported by substantial evidence.

Finally, Claimant argues that the ALJ failed to develop the record when the ALJ declined to order IQ testing after Dr. Bernardo diagnosed Claimant with low intellectual functioning. (Pl.'s Br. at 12.)

In Cook v. Heckler, the Fourth Circuit noted that an ALJ has a "responsibility to help develop the evidence." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). The court stated that "[t]his circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on evidence submitted by the claimant when that evidence is inadequate." Id. The court explained that the ALJ's failure to ask further questions and to demand the production of further evidence about the claimant's arthritis claim, in order to determine if it met the requirements in the listings of impairments, amounted to a neglect of his duty to develop the evidence. Id.

Nevertheless, it is Claimant's responsibility to prove to the Commissioner that he or she is disabled. 20 C.F.R. § 416.912(a) (2009). Thus, Claimant is responsible for providing medical evidence to the Commissioner showing that he or she has an

14

impairment.  Id. § 416.912(c).  In Bowen v. Yuckert, the Supreme Court noted:

> The severity regulation does not change the settled allocation of burdens of proof in disability proceedings. It is true . . . that the Secretary bears the burden of proof at step five . . . [b]ut the Secretary is required to bear this burden only if the sequential evaluation process proceeds to the fifth step.  The claimant first must bear the burden . . . of showing that . . . he has a medically severe impairment or combination of impairments . . . .  If the process ends at step two, the burden of proof never shifts to the Secretary. . . .  It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.

Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Although the ALJ has a duty to fully and fairly develop the record, he is not required to act as plaintiff's counsel. Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994).  Claimant bears the burden of establishing a prima facie entitlement to benefits.  See Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); 42 U.S.C.A. § 423(d)(5)(A)("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.")  Similarly, he or she "bears the risk of non-persuasion." Seacrist v. Weinberger, 538 F.2d 1054, 1056 (4th Cir. 1976).

At the first administrative hearing, the ALJ determined that the record was in need of further development and sent Claimant for

a consultative mental examination, including "academic and cognitive functioning" testing. (Tr. at 334.) At the supplemental hearing, counsel asked if the ALJ would order an IQ test in light of Dr. Bernardo's finding of low intellectual functioning. (Tr. at 358.) The ALJ responded that he was "not inclined to order one because of his past work history, I think, is within the residual functional capacity that I gave." (Tr. at 359.) However, the ALJ explicitly indicated that he "would not preclude [Claimant's counsel] from arranging for that." (Tr. at 359.)

The ALJ adequately developed the record related to Claimant's intellectual functioning by sending Claimant for a consultative examination with Dr. Bernardo. He gave Claimant the opportunity to obtain IQ test results, but Claimant declined. The ALJ was not obligated to obtain additional testing such as IQ testing. The record in this regard simply was not incomplete or inadequate, particularly in light of Dr. Bernardo's examination.

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings is DENIED, the final decision of the Commissioner is AFFIRMED and this matter is DISMISSED from the docket of this court.

The Clerk of this court is directed to transmit copies of this Order to all counsel of record.

ENTER: February 24, 2011

16  *Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge